**Rafael Alexander AVELLANEDA, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14–14–00509–CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed June 16, 2016

Kurt B. Wentz, Houston, TX, for Appellant.

Kathryn Davis, Houston, TX, for State.

Panel consists of Justices Boyce, Busby, and Brown.

## OPINION

J. Brett Busby, Justice

A jury convicted appellant Rafael Alexander Avellaneda of felony murder based on the felony of injury to a child. *See* Tex. Penal Code Ann. §§ 19.02(b)(3), 22.04(a), (c)(1) (West 2011). Appellant challenges his conviction in three issues. Appellant argues in his first two issues that the trial court abused its discretion when it denied his motion to suppress his custodial statement because it was not given voluntarily. We overrule both issues because the record supports the trial court's conclusion that appellant's statement was given voluntarily. In his third issue, appellant contends the trial court erred when it denied his request to include the offense of injury to a child by omission in the jury charge as a lesser-included offense. We overrule this issue because injury to a child by omission is not a lesser-included offense of felony murder. We therefore affirm the trial court's judgment.

### BACKGROUND

Appellant and Angelica Martinez had three children, all girls. A.M., the complainant, was the third child. A.M. was born on November 20, 2011. Martinez and her three daughters lived with her family while appellant lived with his parents. Appellant rarely saw his children and, according to Martinez, appeared nervous and unsure around them.

Martinez and the children went to stay with appellant for the weekend beginning Friday, January 12, 2012. A.M. was seven weeks old at that time. On January 15, Martinez learned that her mother had been taken to the hospital, and she told appellant that she needed to go to the hospital to visit her mother. Appellant asked her not to go because he did not

want her to leave him alone with the children. Martinez decided to go to the hospital anyway. Martinez left the house about 4:30 in the afternoon.

Martinez returned to appellant's home about 11:00 that night. Appellant let Martinez into the house and told her that he was glad she was home. When Martinez headed for the bedroom to check on A.M., appellant grabbed her arm and told her that he needed to tell her something about A.M. Appellant told Martinez that A.M. was laying on the bed and the two older children were jumping on the same bed. Appellant continued that he left the bedroom for a moment and when he returned, he saw A.M. lying on the floor. Martinez hurried into the bedroom, where she saw that A.M.'s lips were a little purple. Martinez picked A.M. up and observed that something was not right with A.M.'s neck. While Martinez was doing this, appellant explained that he had picked A.M. up and had performed C.P.R. on her. Appellant did not, however, call 9-1-1 or take A.M. to a doctor. Martinez rushed A.M. to the hospital, where the emergency room doctors pronounced her dead after unsuccessfully trying to revive her for about two hours.

Officer Andrew Williams of the Houston Police Department was dispatched to maintain the scene at appellant's home. Williams located and detained appellant, who was watching a movie when he arrived. Appellant told Williams that A.M. had fallen off the bed when the other girls were jumping on it. Appellant told Williams that he picked A.M. up, placed the baby back on the bed, and continued to watch his movie. Appellant told Williams that when he checked on A.M. later in the evening she was not breathing.

Officer Jason Oliphant, a crime scene investigator, was dispatched to the hospital to document A.M.'s body. After he fin-

ished at the hospital, Oliphant reported to appellant's home, where he took pictures of the scene. Oliphant also conducted a "walk-through video" of the home with appellant and the homicide investigators. Oliphant did not notice any sharp objects near the bed that A.M. could have hit when she fell. He also measured the height of the bed and determined that it was less than two feet.

Homicide investigators J.P. Villarreal and Tracy Andrade arrived at the hospital in the early morning hours of January 16. They spoke with Dr. Kathy Gray, the emergency room doctor who had initially treated A.M. Dr. Gray showed the investigators a depression on A.M.'s skull that she considered abnormal. The investigators also spoke with Martinez and then went to appellant's house. They questioned appellant during the walk-through video and then later at the police station.

Dr. Katherine Haden–Pinneri, an assistant medical examiner, performed the autopsy on A.M. Dr. Haden–Pinneri found two areas of significant trauma on A.M.'s head: one on the right side, the other on the back side. Dr. Haden–Pinneri also discovered two fractures in A.M.'s skull. Dr. Haden–Pinneri concluded that both head injuries were caused by blunt-force trauma and would not have been the result of A.M. falling off of a bed.

Dr. Haden–Pinneri consulted with Dr. Jennifer Love, a forensic anthropologist at the medical examiner's office. Dr. Love's examination determined that A.M.'s skull was "extensively fractured." Dr. Love also found two areas in A.M.'s skull that were "depressed," which convinced her that A.M.'s skull had been impacted by a significant force in two different locations. Dr. Love concluded that A.M.'s injuries were far too complex to be the result of a simple fall, another child falling on her, or entrapment between two objects. Dr.

Love also concluded that A.M's injuries far exceeded the types of bumps that children normally receive in life. Dr. Love instead concluded that A.M.'s injuries were consistent with her head: (1) being hit with a blunt object, (2) being hit against a blunt object, or (3) being hit with a hand or fist.

Once her investigation was complete, Dr. Haden–Pinneri concluded that A.M. died as a result of blunt force trauma and that the manner of her death was homicide. The homicide detectives investigating A.M.'s death received the final autopsy report confirming that A.M.s death was a homicide on February 13, 2013.

Appellant was arrested soon thereafter and taken to the Houston Police Department's jail. Sergeant Meeler and Officer Villareal, the homicide detectives investigating A.M.'s death, picked appellant up from the jail the next morning and took him to the police station to be interviewed. Villareal drove while Meeler rode in the back of the police vehicle with appellant. Once they arrived at the police station, Meeler took appellant up the elevator and into an interview room while Villareal parked the car. Meeler subsequently interviewed appellant while Villareal observed the interview from a video monitor at his desk. Meeler read appellant his *Miranda* warnings at the beginning of the video and appellant agreed to speak with Meeler. Appellant admitted during the interview that he might have hit A.M. once or twice when she would not stop crying. Appellant then asked that the interview be stopped and Meeler stopped the interview.

Appellant filed a pre-trial motion to suppress the video of his custodial statement

to Sergeant Meeler. The trial court conducted a hearing and denied the motion. The video of the statement was introduced into evidence during appellant's trial. At the conclusion of the evidence, the jury found appellant guilty of the felony murder of a child under fifteen years of age. The trial court sentenced appellant to 25 years in prison. This appeal followed.

ANALYSIS

## I. The trial court did not abuse its discretion when it denied appellant's motion to suppress his custodial statement as involuntarily given.

Appellant argues in his first two issues that the trial court abused its discretion when it denied his motion to suppress his custodial statement. Appellant contends his statement was not voluntary because it was induced by improper promises from one of the interrogating officers.[1] Specifically, appellant alleges that after spending a night in jail without sleeping, one of the interrogating officers spoke with him in the elevator on the way up to the interrogation room and promised appellant that he would receive one year of probation if he admitted to the crime. In appellant's view, the officer's conduct violated his rights under both the United States and Texas Constitutions, as well as the Texas Code of Criminal Procedure.

### A. Standard of review

 We review a trial court's ruling on a motion to suppress for abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348

---

1. Appellant testified during the suppression hearing that Officer Villareal took him into the police station and made the alleged promise while escorting him, alone, up the elevator to the interview room. Both Meeler and Villareal testified, however, that it was Meeler who escorted appellant to the interview room and rode with him in the elevator. In his brief, appellant argues that it was Sergeant Meeler who made the improper promise of lenient treatment in the elevator.

S.W.3d 919, 922 (Tex.Crim.App.2011). We must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007). At a suppression hearing, the trial judge is the sole trier of fact and assesses the witnesses' credibility and decides the weight to give to their testimony. *Id.* at 24–25. When, as here, the trial court makes explicit findings, we determine whether the evidence, when viewed in the light most favorable to the ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App.2006). We are not at liberty to disturb any fact finding that is supported by the record. *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim.App.2007). We review the trial court's legal rulings de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 818. We uphold the ruling if it is supported by the record and correct under any theory of the law applicable to the case. *Hereford v. State*, 339 S.W.3d 111, 117–18 (Tex.Crim. App.2011).

**B. The record supports the trial court's finding that no promises of leniency were made in exchange for appellant's cooperation.**

Appellant contends that suppression of his custodial statement is required because the police investigators induced or coerced his statement with a promise of leniency. Under federal due process, a statement is involuntary if the defendant was offered inducements of such a nature or coerced to such a degree that the inducements or coercion produced the statement. *See Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App.1995). The burden of proof at the hearing on admissibility is on the State, which must prove by a preponderance of the evidence that the defendant's statement was given voluntarily. *Id.*

Under Texas law, article 38.21 of the Code of Criminal Procedure requires that, to be admissible into evidence, a defendant's statement must be "freely and voluntarily made without compulsion or persuasion." Tex.Code Crim. Proc. Art. 38.21 (West 2005). When determining the question of voluntariness, a court should consider the totality of circumstances under which the statement was obtained. *Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim.App.1997). For a promise to render a confession invalid under article 38.21, the promise must have been positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak untruthfully. *Coleman v. State*, 440 S.W.3d 218, 223 (Tex.App.—Houston [14th Dist.] 2013, no pet.) (citing *Martinez v. State*, 127 S.W.3d 792, 794 (Tex.Crim.App.2004)). The ultimate question is whether appellant's will was overborne. *Creager*, 952 S.W.2d at 856.

After hearing testimony at the suppression hearing, the trial court signed findings of fact and conclusions of law. Among other things, the court found that: (1) Meeler and Villareal were credible witnesses, while appellant was not; (2) appellant was awake, alert, coherent, and not under the influence of alcohol and drugs during the interview; (3) Meeler and Villareal did not threaten or coerce appellant to go with them to be interviewed; (4) neither Meeler nor Villareal discussed the case with appellant prior to arriving in the interview room; (5) Meeler interviewed appellant while Villareal observed the interview from another room; (6) Meeler read appellant his *Miranda* rights twice, once prior to recording, and again after the recording started but before any questioning began; (7) appellant agreed to

speak with Meeler after hearing and understanding his *Miranda* rights; (8) Meeler did not coerce or threaten appellant to induce him to make a statement; (9) Meeler did not promise appellant anything in exchange for providing his statement; (10) no other police officer threatened or coerced appellant into making his statement; and (11) no other police officer promised appellant anything in exchange for making his statement. Based on these findings, the trial court concluded that appellant knowingly waived his *Miranda* rights and that his statement was voluntarily given.

The only evidence in the record supporting appellant's claim that the police investigators made a promise of lenient treatment in exchange for his confession was his own testimony. Both Meeler and Villareal testified that no promise was made to appellant in exchange for his confession. Additionally, no promise appears in appellant's recorded statement. The trial court, as the sole judge of the credibility of the witnesses, chose to believe the officers' testimony and disbelieve appellant's. We defer to this assessment of the testimony. *Coleman,* 440 S.W.3d at 224. We conclude that the record supports the trial court's findings that neither Sergeant Meeler nor Officer Villareal made a promise of lenient treatment to appellant that overbore his will or induced him to admit to the crime. *Id.* Because the record supports the trial court's legal conclusion that appellant's statement was voluntarily given, we hold that it did not abuse its discretion when it denied appellant's motion to suppress. *Id.* We overrule appellant's first and second issues.

## II. The trial court did not err by denying appellant's request to charge the jury on a lesser-included offense of injury to a child by omission.

■ In his third issue, appellant argues that the trial court erred when it denied his request for an instruction on a lesser-included offense. Specifically, appellant contends he was entitled to an instruction on the offense of injury to a child by omission because he failed to either call 9–1–1 or take A.M. to the doctor when he allegedly found her on the floor.

The Texas Code of Criminal Procedure provides that, "[i]n a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." Tex.Code Crim. Proc. Ann. art. 37.08 (West 2006). An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex.Code Crim. Proc. Ann. art. 37.09.

■ We employ a two-step analysis to determine whether a lesser-included-offense instruction should be given. *Sweed v. State,* 351 S.W.3d 63, 67 (Tex.Crim.App. 2011). In the first step, we consider whether the lesser-included offense is included within the proof necessary to establish the offense charged. *Id.* at 68. The second step requires us to determine whether there is some evidence from which a rational jury could acquit the de-

fendant of the greater offense while convicting him only of the lesser-included offense. *Id.* We need only examine the first step to resolve appellant's third issue.

A charge of injury to a child can be based on an act or an omission. *Rodriguez v. State,* 454 S.W.3d 503, 507 (Tex.Crim.App.2014); *see* Tex. Penal Code Ann. § 22.04(a). An "act" is a voluntary or involuntary bodily movement. Tex. Penal Code Ann. § 1.07(a)(1) (West 2011). An omission is a failure to act. *Id.* at § 1.07(a)(34). An omission, such as failing to take an injured child to the doctor, cannot be an affirmative act. *Rodriguez,* 454 S.W.3d at 508.

Felony murder occurs when a person "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt ... he commits or attempts to commit an *act* clearly dangerous to human life that causes the death of an individual." *Id.* at 507 (emphasis added) (quoting Tex. Penal Code Ann. § 19.02(b)(3)). Injury to a child may serve as the underlying crime in a felony murder prosecution, but only if the injury is based on an act, not an omission. *Id.*

Here, appellant was charged with felony murder based on three possible acts clearly dangerous to human life: (1) striking A.M.'s head with a blunt object, (2) causing A.M.'s head to strike a blunt object, or (3) striking A.M.'s head with his hand. Because an omission cannot be an affirmative act, the proof needed to establish the offense of injury to a child by omission is not included within the proof necessary to establish the charged offense of felony murder. We therefore hold that the trial court did not err when it denied appellant's request to charge the jury on the offense of injury to a child by omission because that offense is not a lesser-included offense of felony murder based on an allegation of injury to a child arising out of an act. *See Bell v. State,* 693 S.W.2d 434, 436 (Tex. Crim.App.1985) ("An allegation that an offense has been committed in one way may include a lesser offense, while an allegation that the offense was committed in another way would not include the lesser offense."). We overrule appellant's third issue.

### Conclusion

Having overruled all issues raised by appellant in this appeal, we affirm the trial court's judgment.