**Affirmed and Memorandum Opinion filed June 19, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00808-CR
## NO. 14-16-00809-CR

## CURTIS LEE DUNCAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1464130 & 1464131**

## M E M O R A N D U M    O P I N I O N

Appellant Curtis Lee Duncan was charged with aggravated kidnapping and aggravated robbery. *See* Tex. Penal Code Ann. §§ 20.04, 29.03 (West 2016). As part of a plea agreement with the State, appellant agreed that he would plead guilty to both charges if the trial court denied his pre-trial motion to suppress his recorded

confession. After an evidentiary hearing, the trial court denied appellant's motion. Appellant then pled guilty to both charges and the trial court sentenced him to serve thirty years in prison.

On appeal, appellant contends in two related issues that the trial court abused its discretion in denying his motion to suppress. Appellant argues in his first issue that the three law enforcement officers who testified during the suppression hearing lied about not having questioned appellant about the robbery before his recorded interview. We overrule this issue because the evidence, when viewed in the light most favorable to the trial court's ruling, supports the trial court's finding that the officers were credible.

Appellant contends in his second issue that his waiver of rights was not voluntary. We overrule this issue because, under the totality of the circumstances under which appellant's statement was obtained, the record supports the trial court's determination that appellant's confession was knowingly and voluntarily made and was not the result of force, compulsion, or persuasion. We therefore affirm the trial court's final judgment.

## BACKGROUND

Appellant was involved in a violent robbery of an Academy distribution center during which more than 70 firearms were stolen.[1] Special Agent Matthew Abowd from the Bureau of Alcohol, Tobacco, Firearms, and Explosives was assigned to investigate the robbery. Abowd approached the Pasadena Police Department about assisting with his investigation. The police department assigned two detectives, Alejandro Duran and Jason Phillips, to assist Abowd in any way that he needed.

---

[1] Appellant and the other persons involved in the robbery kidnapped a security guard at gun point and used his keys to gain access to the Academy distribution center. We will collectively refer to both the kidnapping and the robbery as the Academy robbery.

Abowd, along with Duran and Phillips, went to appellant's mother's apartment as part of the investigation. Abowd knocked on the door and appellant unexpectedly answered. Abowd asked appellant to step outside while he went in to speak with appellant's mother. Duran and Phillips detained appellant for outstanding traffic warrants. Once those warrants were confirmed, the detectives placed appellant under arrest and called for a Pasadena city marshal to transport appellant to the Pasadena jail. The detectives asked appellant for basic booking information, such as his name and date of birth. According to the detectives, neither questioned appellant about the Academy robbery. Marshal Contrales soon arrived to take appellant to the Pasadena jail. The detectives remained with Abowd after appellant had been taken away. Abowd and the detectives travelled separately to the Pasadena Police Station once Abowd finished interviewing appellant's mother.

According to Abowd, when he returned to the Pasadena Police Station, the detectives met him at the station's sally port and told him that appellant wished to speak with him. Abowd asked appellant if he wanted to talk with him and appellant responded yes. At that point, they proceeded to an interview room. After waiving his rights, appellant confessed his involvement in the Academy robbery. Appellant filed a motion to suppress his statement given during that interview. The trial court conducted an evidentiary hearing on appellant's motion.

All three officers involved in the investigation leading up to appellant's confession testified during the suppression hearing.[2] Duran testified that they arrested appellant at his mother's apartment for outstanding traffic warrants. He further testified that they called for a city marshal to transport appellant to the city

---

[2] Marshal Contrales died before the suppression hearing. Appellant testified, however, that Contrales did not ask him any questions about the Academy robbery while he was being transported to the Pasadena jail.

jail. Duran did not question appellant about the Academy robbery at any time the evening appellant was arrested. Duran also did not hear appellant ask for a lawyer. Duran testified that he escorted appellant and Abowd to an interview room at the Pasadena Police Station. Duran did not participate in appellant's interview.

Phillips testified next. Phillips denied asking appellant any questions about the Academy robbery. He also never heard appellant ask for a lawyer. Finally, Phillips was unaware of anyone else associated with the Pasadena Police Department questioning appellant about the Academy robbery.

Abowd testified that he did not question appellant about the robbery until they were inside the interview room.[3] Once inside the room, Abowd began the interview by trying to build rapport with appellant. Abowd then discussed with appellant the reason they were there. Abowd reviewed appellant's rights, had appellant read his rights out loud, and then asked appellant if he wanted to talk with him about the Academy robbery. After a short delay, appellant told Abowd that he did and he signed a written waiver of his rights. Abowd testified that appellant did not appear to be intoxicated and understood what they were discussing. Abowd was not aware of anyone else questioning appellant about the robbery that evening. During cross-examination, Abowd admitted that he did not take appellant before a magistrate prior to interviewing him. Abowd also admitted that he discussed with appellant the possibility that if he was prosecuted in the federal system, the federal sentencing guidelines provided benefits for cooperating. After Abowd finished testifying, a copy of appellant's video statement was admitted into evidence and was reviewed by the trial court. Appellant did not ask to talk with a lawyer at any time during the recorded statement.

---

[3] The room was equipped with a video recording device that had started recording before Abowd and appellant entered the room.

Appellant also testified during the suppression hearing. Among other things, appellant testified that he had taken a gram of methamphetamine daily for two or three years and he had consumed a gram prior to his arrest. He claimed that he was high at the time of his arrest. Appellant testified that he repeatedly asked to talk with a lawyer both before and after he arrived at the Pasadena jail. Appellant asserted that he had been tricked into talking with Abowd by the law enforcement officers telling him that he would get a lawyer as soon as he gave a statement. Although appellant testified that the Pasadena detectives told him his name had been mentioned in connection with the Academy robbery, appellant did not testify that he was interrogated twice about the Academy robbery: first without receiving *Miranda* warnings and then, after he had confessed, a second time after receiving *Miranda* warnings.

At the conclusion of the evidentiary portion of the suppression hearing, appellant argued that his statement should be suppressed because (1) he was not taken before a magistrate prior to the interview; (2) he asked to speak with a lawyer but the interview was not stopped; and (3) his statement was not voluntary because Abowd's questioning was coercive.

The next day, the trial court denied appellant's motion to suppress. The court stated the following on the record:

> I will find that the statement was - - that the officers testified credibly, that the statement was voluntarily made and that the defendant knowingly waived his warnings and that there is no evidence of force, compulsion or persuasion. That the statement was voluntarily given. After the rights were read, he understood and waived.

Appellant's counsel then asked about his argument regarding appellant not being taken before a magistrate. The trial court responded:

> And that's denied. I think that's everything. And so just to make sure

5

that all the points are addressed, that the magistrate's warnings - - that the Miranda warnings were given, they were understood, they were waived. That the statement was voluntarily made and given. That the defendant did not ask for a lawyer prior to waiving and giving that statement and that the nature of the questioning was not coercive nor did it overwhelm the will of the defendant.

Appellant having pleaded guilty, the trial court then sentenced appellant to serve thirty years in prison on each charge, with the sentences to be served concurrently. This appeal followed.

## ANALYSIS

## I. Standard of review and applicable law

The statement of an accused may be used against him if it was freely and voluntarily made without compulsion or persuasion. Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). When the voluntariness of a confession is challenged, the trial court must make an independent determination in the absence of the jury of whether the defendant voluntarily made the statement. *Id.* art. 38.22 § 6; *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). The State has the burden of proving by a preponderance of the evidence that the statement was voluntary. *Alvarado*, 912 S.W.2d at 211. To determine whether a confession was voluntary, a reviewing court must examine the totality of the circumstances. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007).

We review a trial court's ruling on a motion to suppress for an abuse of discretion and we will overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). At a suppression hearing, the trial judge is the sole trier of fact and assesses the witnesses'

6

credibility and decides the weight to give to their testimony. *Id.* at 24–25.

When, as here, the trial court makes explicit findings, we determine whether the evidence, viewed in the light most favorable to the ruling, supports those fact findings.[4] Appellate courts give almost total deference to a trial court's determination of the historical facts that are supported by the record, particularly if the findings are based on credibility and demeanor. *Miller v. State*, 393 S.W.3d 255, 262 (Tex. Crim. App. 2012). This includes findings based on evidence in the form of a videotape. *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006). "When there are factual disputes regarding testimony or the contents of a videotape, the trial court's findings of historical fact are afforded almost total deference," though findings inconsistent with indisputable visual evidence may be disregarded. *Miller*, 393 S.W.3d at 263 (internal quotation marks omitted). We are not at liberty to disturb any fact finding that is supported by the record. *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). We review the trial court's legal rulings de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 818. We uphold the ruling if it is supported by the record and correct under any theory of the law applicable to the case. *Hereford v. State*, 339 S.W.3d 111, 117–18 (Tex. Crim. App. 2011).

## II. Appellant has not shown that the trial court abused its discretion when it found Abowd and the Pasadena detectives credible.

Appellant argues in his first issue that the trial court abused its discretion when it found that Abowd and the Pasadena detectives were credible because appellant's

---

[4] *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006); *see State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) ("The findings and conclusions need to be recorded in some way, whether written out and filed by the trial court, or stated on the record at the hearing."); *Joseph v. State*, 514 S.W.3d 838, 842 n.2 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (same).

recorded statement "unequivocally and uncontrovertibly demonstrates" that they were not truthful. Appellant's argument begins with Abowd's suppression-hearing testimony that he first questioned appellant about the Academy robbery inside the interview room at the police station. Appellant then points out several statements Abowd made during his recorded interview that he contends establish Abowd lied about the timing of his questioning.

An appellate court may overturn a trial court's credibility finding only under narrow circumstances. *See Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (declining to give "almost total deference" to trial court's findings under the narrow circumstance where videotape presented indisputable visual evidence contradicting essential portions of police officer's testimony regarding defendant's consent to search). We therefore examine whether the trial court's credibility finding is supported by the record. *Miller*, 393 S.W.3d at 262.

Appellant first focuses on two questions Abowd asked appellant during the interview: "Now, you told me that you stole 14 guns, right? And you got $2400 for it right?" The two questions occurred about fifteen minutes into the recorded interview, after Abowd had reviewed appellant's rights but before appellant signed the waiver. In appellant's view, the fact that he had not previously mentioned during the interview the number of stolen guns, or the amount of money received for them, conclusively establishes that Abowd had interviewed appellant previously and obtained an unrecorded confession without warning appellant of his rights. According to appellant, Abowd lied when he testified otherwise during the suppression hearing. *See Vasquez v. State*, 483 S.W.3d 550, 553 (Tex. Crim. App. 2016) (explaining that a "two-step" or "question first, warn later" interrogation occurs when a suspect is interrogated without receiving *Miranda* warnings, a confession is obtained, the suspect is given the *Miranda* warnings, and the suspect

8

repeats the confession); *Martinez v. State*, 272 S.W.3d 615, 626 (Tex. Crim. App. 2008) (holding that when "two-step" interrogation tactic has been used deliberately, suspect's unwarned and warned statements must be suppressed).

Although this is one possible inference arising out of the interview questions, it is not the only one. Nor is it one that, under the appropriate standard of review, we are compelled to accept. Instead, the trial court reasonably could have found, based on the complete content of appellant's interview,[5] that Abowd learned this information before appellant's arrest—possibly from appellant's brother, who was also in custody. The trial court also reasonably could have found that Abowd revealed this information in the manner he did to show appellant how much the police already knew about the robbery and thereby encourage appellant to cooperate. *See Allen v. State*, 479 S.W.3d 341, 351 (Tex. App.—El Paso 2015, no pet.) (rejecting contention that police interrogation technique utilizing intentional deception to invoke response from suspect rendered statement involuntary). We conclude Abowd's interview questions do not present indisputable visual evidence contradicting his hearing testimony, and therefore do not establish that the trial court abused its discretion when it found him credible. *See Drake v. State*, 123 S.W.3d 596, 602 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (affirming denial of motion to suppress when ruling was based on trial court's evaluation of defendant and police investigator's credibility); *cf. Miller*, 393 S.W.3d at 263–68 (reversing trial court's denial of motion to suppress when scene video established there was no evidence of domestic violence).

Appellant next directs our attention to several related statements made by

---

[5] During an earlier portion of the interview, Abowd told appellant that "there are facts I know and that you know and I gotta make sure they match up." Abowd also mentioned that he "talked to another family member. Your brother, he's in custody as well." Abowd continued that he "went to [appellant's] house after talking to your brother."

Abowd during the early part of the recorded interview. Abowd said, "[w]e were talking on the way up here about — you said you went to TYC, right?" After appellant responded that he had served two years for burglary, Abowd asked him "[w]hat did you steal then?" A few seconds later, Abowd said: "[a]s we talked about, I came by and talked to your mom tonight and — um you're in a tough spot man." Several minutes later, Abowd told appellant: "[n]ow I'm going to talk to you about the robbery — aggravated robbery, kidnapping, and the theft of the firearms and I'm going to ask you some questions . . . about the details. I want you to tell me your story. OK, how ya'll planned it. . . . [A]nd then we're gonna back up and I'm gonna ask you specifics if I need specifics in certain areas, like where did you meet, what kind of car you were in . . . ." Seconds later, Abowd said, "like I told you on the walk up here, I'm worried about the guns and I'd like to get some of the guns off the street. If you can help me with that great. I understand you might not know all the details, you know, the second you sell 'em, they're gone—I understand all that."

Appellant also points to two of his responses after Abowd said "let's talk about why you're here" and revealed that he had already talked with appellant's brother, who was also in custody. Appellant interrupted Abowd, asking "[d]id he get caught with the guns or what?" After Abowd responded "yeah," appellant said "[i]t was 13 — I was missing one." According to appellant, these portions of the recorded interview establish that the trial court abused its discretion when it found Abowd credible because "at some point prior to the two men entering the interview booth, appellant incriminated himself to either [Abowd] or the two Pasadena officers without having received [*Miranda*] warnings."

We conclude these questions and statements highlighted by appellant do not show an abuse of discretion by the trial court. First, the trial court reasonably could have found that the information regarding the robbery Abowd shared with appellant

10

during this exchange was not gathered from an unrecorded interrogation, but came instead from some other source, such as appellant's brother. *See State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013) ("The winning side [in a suppression hearing] is afforded the strongest legitimate view of the evidence as well as all reasonable inferences that can be derived from it." (internal quotation marks omitted)). Second, the trial court reasonably could have found that appellant's own statements do not reveal prior interrogation by Abowd because they were spontaneous responses to the revelation that appellant's brother was in custody. *See Allen*, 479 S.W.3d at 351 (considering suspect's demeanor and answers during interview before rejecting argument statement was involuntarily given).

Finally, we address Abowd's questions about appellant's prior incarceration in TYC, which revealed that a conversation occurred while they were walking up to the interview room. The trial court reasonably could have found that these types of questions regarding appellant's prior encounters with law enforcement were not an interrogation regarding the Academy robbery, but were instead questions designed to build rapport with appellant. *See Jones v. State*, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990) (observing that not all post-arrest police questioning constitutes an interrogation); *Ruth v. State*, 167 S.W.3d 560, 571 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (stating that general and routine questions do not constitute interrogation); *Daniels v. State*, 25 S.W.3d 893, 897 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("Interrogation encompasses any word or action on the part of the officers that they should know is reasonably likely to elicit an incriminating response from the suspect."). Asking such questions before warnings are given does not require suppression of statements made during a subsequent interrogation. *See Morris v. State*, 897 S.W.2d 528, 531 (Tex. App.—El Paso 1995, no pet.) (stating that if a defendant's "statements do not stem from custodial interrogation, neither

*Miranda* nor Article 38.22 require their suppression.").

Appellant also argues that the testimony of Abowd and the police detectives conflicts regarding their interactions with appellant at the Pasadena Police Station. Abowd testified that he was unaware of anyone questioning appellant about the Academy robbery prior to the start of the recorded interview. Both police detectives testified that they did not question appellant about the robbery. Appellant suggests there is a conflict here because Abowd testified that upon his arrival at the police station, the officers told him appellant wanted to talk to him. In appellant's view, this testimony shows that one or both of the detectives talked with appellant and caused him to talk to Abowd. We once again conclude appellant has not established an abuse of discretion by the trial court because the court reasonably could have found that appellant voluntarily told the detectives he wanted to speak with Abowd. *Duran*, 396 S.W.3d at 571. We overrule appellant's first issue.

### III. Appellant has not shown that the trial court abused its discretion by finding his statement voluntary.

Appellant argues in his second issue that his confession was not voluntary because it resulted from Abowd's use of intimidation, coercion, or deception. A statement is involuntary and may not be used against a defendant under federal due-process principles if the defendant was offered inducements of such a nature or coerced to such a degree that the inducements or coercion produced the statement. *See Alvarado*, 912 S.W.2d at 211. Under Texas law, article 38.21 of the Code of Criminal Procedure requires that, to be admissible into evidence, a defendant's statement must be "freely and voluntarily made without compulsion or persuasion." Tex. Code Crim. Proc. Art. 38.21. To render a defendant's confession invalid under article 38.21, a promise must have been positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak

12

untruthfully. *Coleman v. State*, 440 S.W.3d 218, 223 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A defendant's will may also be overborne if the record shows that there was "official, coercive conduct of such a nature" that a statement by the defendant was "unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado*, 912 S.W.2d at 211. The ultimate question in both situations is whether appellant's will was overborne. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).

Appellant's argument is based largely on his contention that Abowd conducted an improper two-step interrogation and then he and the Pasadena detectives lied about it during their suppression-hearing testimony. We have already addressed and rejected this contention. We turn next to appellant's argument that his statement was involuntary because Abowd induced or tricked him into confessing through a promise of lenient treatment. We conclude the record does not support this contention. At most, the record reveals Abowd telling appellant that under the federal sentencing guidelines, a defendant who cooperates with the police may receive less severe punishment. This statement is insufficient to establish that appellant's will was overborne. *See Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (observing that general statements regarding how a confession may sometimes result in leniency do not render a confession involuntary); *Herrera v. State*, 194 S.W.3d 656, 660 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding investigator's statement, "We can talk to the D.A., get you an offer, if you help us," not specific enough to influence appellant to speak untruthfully); *Ramirez v. State*, 76 S.W.3d 121, 126 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("Appellant has failed to demonstrate that the party in authority positively and unequivocally promised leniency in return for a confession.").

Finally, in support of his contention that Abowd coerced him into confessing,

appellant points to Abowd (1) reviewing appellant's criminal history, (2) mentioning appellant's mother's poor circumstances, (3) informing appellant that his brother was already in custody, (4) assuring appellant that no one had accused him of being the ringleader of the robbery, and (5) informing appellant through leading questions that he was aware of the number of firearms appellant had taken from the Academy. We conclude these comments are insufficient to have overborne appellant's will so that he was willing to speak untruthfully. *See Allen*, 479 S.W.3d at 351 (rejecting appellant's contention his confession was coerced after reviewing record, including video of interview).

Because the State met its burden to establish that appellant made his statement voluntarily, we hold the trial court did not abuse its discretion when it denied appellant's motion to suppress. We overrule appellant's second issue.

## CONCLUSION

Having overruled both issues raised by appellant in this appeal, we affirm the trial court's judgment.

/s/    J. Brett Busby
        Justice

Panel consists of Justices Busby and Wise and Senior Justice Yates.[6]
Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[6] The Honorable Leslie B. Yates, Senior Justice of the Fourteenth Court of Appeals sitting by assignment.

14