**Affirmed and Opinion filed June 25, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00134-CR

### RICHARD GENE SOLOMON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 13CR1457**

## O P I N I O N

Appellant, Richard Gene Solomon, appeals his conviction for aggravated robbery with a deadly weapon. In his sole issue, appellant contends the trial court erred by denying appellant's motion to suppress the results of a pretrial photographic-identification procedure and an in-court identification. We affirm.

# I. BACKGROUND

According to the State's evidence, appellant asked his friend where he could obtain marijuana. The friend directed appellant to the friend's cousin, Aousha Merchant. Appellant called Merchant, identified himself, and inquired about marijuana. On the night of November 1, 2012, Merchant and appellant met outside a home in La Marque, Texas. Merchant entered the back seat of the car in which appellant had arrived. After Merchant showed appellant his marijuana, appellant exited the car and, holding a revolver, came around to where Merchant was seated. Merchant grabbed appellant's arm, they struggled, and Merchant was shot in the abdomen. Merchant attempted to run to his own friend's car, but appellant also pointed the gun toward that man. Merchant threw the marijuana toward appellant, who picked it up. Merchant's friend drove him to the hospital, and he survived his wound.

About three months after the incident, Merchant viewed a police photographic array. Of six photos, he identified appellant as the shooter. Appellant filed a pre-trial motion to suppress the results of that procedure and any intended in-court identification on the ground the procedure was impermissibly suggestive and thus tainted an in-court identification. After a hearing, the trial court denied the motion. Evidence regarding Merchant's pre-trial identification of appellant was then admitted at trial. At trial, Merchant also identified appellant as the shooter. Merchant testified he got a "good look" at the shooter the night of the incident, he knew appellant because they were both part of a group that had socialized a few months before, and the shooter had distinctive facial and neck tattoos, including a cross under his eye, which were present on appellant at trial.

A jury convicted appellant of aggravated robbery with a deadly weapon. After appellant pleaded "true" to two enhancement paragraphs, the trial court sentenced him to thirty-eight years' confinement.

## II. MOTION TO SUPPRESS

In his sole issue, appellant contends the trial court erred by denying appellant's motion to suppress the pre-trial photographic identification and the in-court identification. We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost total deference to the trial court's findings of historical fact that are supported by the record and its application of the law to facts if the resolution of those questions turns on an evaluation of credibility and demeanor. *Id.* We review *de novo* the trial court's application of the law to the facts when the issue does not turn on credibility and demeanor. *Id.* The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony relative to a motion to suppress. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process. *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995). Similarly, an in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification. *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008). We employ a two-step analysis to test the admissibility of an identification: "1) whether the out-of-court identification procedure was impermissibly suggestive; and 2) whether that

3

suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification." *See Barley*, 906 S.W.2d at 33 (internal footnote omitted). An appellant must establish both elements by clear and convincing evidence. *Santos v. State,* 116 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (citing *Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993)).

Appellant argues the identification procedure in this case was impermissibly suggestive because (1) the officer who prepared the array removed facial tattoos from appellant's photo, (2) the detective who administered the procedure informed Merchant that facial tattoos had been removed from the suspect's photo, thereby indicating his photo was included in the array, and (3) the detective raised his voice when presenting appellant's photo, thereby signaling it depicted the suspect. We conclude appellant failed to establish the procedure was impermissibly suggestive; thus, we need not decide whether any impermissibly suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *See Barley*, 906 S.W.2d at 33; *Santos*, 116 S.W.3d at 451.

## A.    The Evidence

The two officers involved in the procedure testified at the suppression hearing. The trial court also admitted an audio/video recording of the procedure, a police-department form completed for the procedure, and the six photos included in the array. This evidence collectively showed the following:

The procedure was a "double-blind" photographic line-up—in which the officer administering the procedure does not know the identity of the suspect or whether his photo is in the array. Officer Brian Auzston, who was quite experienced in assembling such arrays, assembled this one, at the request of the investigating detective, Sergeant Spruill. Officer Auzston was informed that appellant was the suspect, so Officer Auzston obtained and included a photo of

4

appellant in the array. Officer Auzston explained that, in general, he tries to include photos of six persons with a similar appearance. That proved difficult in this case because appellant had distinctive facial tattoos, including on his cheekbone and under his eyes. Officer Auzston believed those characteristics would make the viewer more likely to choose appellant by focusing solely on the tattoos. Thus, Officer Auzston photo-shopped out the tattoos in appellant's photo, such that none of the six photos depicted persons with facial tattoos. Officer Auzston opined that it would have been unfair to leave in the tattoos and his actions worked to appellant's advantage by removing distinctive marks. Officer Auzston's involvement ended at that point.

Detective Chris Kelemen then administered the procedure, which was recorded in its entirety. He had no previous involvement in the case, did not know the identity of the suspect, and was merely given the photos by Sergeant Spruill. Detective Keleman first read Merchant the instructions on the police-department form, which included: "You should not guess or attempt to conclude that the person who committed the crime is present."; and "Remember, it is just as important to clear innocent persons from suspicion as it is to identify the guilty parties." Keleman then handed Merchant, sequentially, six separate folders, each containing a photo.

When viewing photo number 5 (appellant's photo), Merchant stated it "looks like him." After viewing the last photo in the array and an earlier photo again, he chose number 5. He was asked to write in his "own words" how certain he was of the identification. While pondering that request, he remarked, "I know he had tattoos, but I don't see the tattoos on his face." He then wrote next to photo number 5, "I'm a hundred percent sure this is the person that shot me." Merchant

5

completed the portion of the form for recording the results, identifying photo number 5 and writing the same words quoted above.

## B.     Analysis

### 1.     Alteration of the photo

Appellant first argues that the removal of facial tattoos from appellant's photo rendered the procedure impermissibly suggestive. In its written findings of fact and conclusions of law, the trial court found Officer Auzston was credible and concluded the procedure was "not suggestive" or "not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The fact that Officer Auzston removed the tattoos was undisputed; thus, we review *de novo* whether that action rendered the procedure impermissibly suggestive. *See Amador*, 221 S.W.3d at 673; *Loserth v. State*, 963 S.W.2d 770, 772–73 (Tex. Crim. App. 1998).

We conclude that action did not render the procedure impermissibly suggestive. If anything, that action was favorable to appellant by removing distinguishing characteristics. *Cf. Barley*, 906 S.W.2d at 33 (recognizing suggestiveness may be created by the content of the array itself if the suspect is the only individual closely resembling the pre-procedure description). Appellant cites no authority that an officer is precluded from removing distinguishing features when preparing a photo array, and Officer Auzston was unaware of any department protocol forbidding such action.

Appellant suggests that Officer Auzston should have instead added tattoos to the other photos. Appellant emphasizes the officer's testimony when asked why he did not take that action—that such process would be time-consuming. However, appellant fails to demonstrate how removing his tattoos to give all persons a

similar appearance made the process any less fair than adding tattoos to the other photos to give all persons a similar appearance. Consequently, appellant fails to show that removal of the tattoos somehow suggested to Merchant that appellant's photo depicted the suspect.

### 2. Whether Detective Keleman suggested the suspect's photo was included

We turn to appellant's contention that the procedure was impermissibly suggestive because Detective Keleman informed Merchant the suspect's photo was included in the array. Suggestiveness may be created by the manner in which the pre-trial identification procedure is conducted; for example, by police pointing out the suspect or suggesting he is included in the photo array. *See id*. In this case, there was no evidence presented at the suppression hearing reflecting that any officers informed Merchant (1) the suspect's photo was included, or (2) tattoos had been removed from the suspect's photo, thereby indicating his photo was included. Instead, appellant relies on testimony provided by Merchant at trial—after the motion to suppress was overruled.

In particular, on direct examination, Merchant was asked the difference between appellant's appearance in the photo array and at trial. Merchant responded, "when I did the photo lineup, the detective told me that they was going to remove all the tattoos from his face and neck." At that point, appellant re-urged his motion to suppress because this new testimony was not elicited at the suppression hearing, but the trial court continued to deny the motion.

We recognize this testimony, in isolation, may be construed as suggesting Merchant was informed appellant's photo would be in the array, albeit with tattoos removed. However, on cross-examination, after first reiterating that he was told tattoos were removed from appellant's photo, Merchant clarified he was not told

7

appellant's photo was included but rather tattoos had been removed from all persons in the array who had such features:

Q. Now, I'm going to go back to that comment about this lineup. You said -- if I understood you correctly, you said the officer said that he had removed -- the officer had removed the tattoos from the photograph?

A. Yes.

Q. From whose photograph?

A. Richard Solomon [Appellant].

Q. Okay.

A. From everybody on the lineup.

. . .

Q. Did the officer who was showing you these lineup photos, did he tell you or suggest to you that [appellant's] photo was in there somewhere either with or without the tattoos?

A. No.

Q. But he did tell you some tattoos had been removed, correct?

A. He told me when I -- when I see the photos that every person in the photo that I see, their tattoos wouldn't be on there if they had a facial or any other type of tattoo on their body, that I wouldn't be able to see them.

To the extent that informing Merchant tattoos had been removed from any photos would suggest the suspect's photo was included or otherwise render the procedure impermissibly suggestive, the trial court did not err by denying the motion to suppress. In its findings (issued after trial), the trial court concluded the officers "did not point out the suspect or suggest that the suspect was included in the line-up or photo array." That conclusion, including whether Detective Keleman made any of the above-cited statements mentioned by Merchant, was a matter within the trial court's discretion because it turned on the credibility and demeanor of witnesses. *See Amador*, 221 S.W.3d at 673; *Loserth*, 963 S.W.2d at

8

772–73. The trial court was free to disbelieve Merchant's testimony or at least conclude he was mistaken, even if not deliberately untruthful. *See Ross*, 32 S.W.3d at 855. Viewing the evidence in the light most favorable to the ruling, the record supports such a determination. *See Kelly*, 204 S.W.3d at 818.

At the suppression hearing, Detective Keleman, whom the trial court expressly found to be credible, testified he did not have any contact with Merchant until the procedure started and that the entire procedure was recorded. The recording demonstrates that Detective Keleman did not make any statements regarding alterations to the photos or otherwise indicate the suspect's photo was in the array. Detective Keleman testified he did not even know the identity of the suspect or whether alterations had been made. Detective Keleman's trial testimony (after Merchant provided the testimony at issue) reiterated that he had no contact with Merchant before the procedure and did not know the identity of the suspect or the persons included in the array. Additionally, department protocols were followed, such as reading the instructions, to ensure Merchant did not know whether the suspect's photo was included.

Moreover, the recording shows Merchant (while pondering his degree of certainty) studied appellant's photo and said "I don't see the tattoos on his face" in such a manner that he appeared slightly confused because he was certain the photo was the suspect but he knew the suspect also had tattoos. Consequently, the trial court acted within its discretion by determining (1) that point was the first time Merchant realized any photos may have been altered, and (2) he was mistaken at trial when stating Detective Keleman informed him photos had been altered because Merchant actually realized that fact himself when viewing the photos.[1]

---

[1] As mentioned above, another detective, Sergeant Spruill, investigated the incident. Officer Auzston gave the array he compiled to Sergeant Spruill, who then gave it to Detective

### 3.    Complaint that Detective Keleman raised his voice

Finally, appellant suggests Detective Keleman raised his voice when handing appellant's photo to Merchant and stating "number 5," thereby signaling that photo depicted the suspect. The trial court found Detective Kelemen's voice "did not get higher" as he placed that photo in front of Merchant. The recording supports that Detective Keleman did not raise his voice relative to number 5 in a manner that would suggest it depicted the suspect, especially considering the detective did not know it depicted the suspect.

In summary, because the procedure was not impermissibly suggestive, the trial court did not err by denying appellant's motion to suppress. We overrule appellant's sole issue and affirm the trial court's judgment.


/s/     John Donovan
Justice


Panel consists of Justices Christopher, Donovan, and Wise.
Publish — Tex. R. App. P. 47.2(b).

---

Keleman. Officer Auzston testified that he told Sergeant Spruill about the alterations. However, appellant is clear in his brief that he complains about the actions of Detective Keleman (not Sergeant Spruill) in allegedly informing Merchant about the alterations, and Merchant claimed (even if not found credible) it was Detective Keleman who informed him about the alterations. Nonetheless, even if appellant contends that Sergeant Spruill informed Merchant of the alterations, there is no supporting testimony, much less clear and convincing evidence. To the extent Merchant's testimony may be construed as referring to Sergeant Spruill, again, the trial court was free to disbelieve the testimony. Further, Sergeant Spruill did not testify at the suppression hearing. And, he testified at trial **after** Merchant revealed he was informed of the alterations, yet appellant did not elicit any testimony from Sergeant Spruill on whether he informed Merchant of the alterations.