**Affirmed and Memorandum Opinion filed November 1, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00141-CR

### GENARO TAMAYO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1367953**

## M E M O R A N D U M   O P I N I O N

Appellant Genaro Tamayo was convicted by a jury of aggravated robbery with a deadly weapon. The jury sentenced appellant to confinement for twenty-five years in the Texas Department of Criminal Justice, Institutional Division.

## I. BACKGROUND

The home of Fany de la Rosa was invaded by three men while she and her two sons, Daniel and Rolando, were preparing to leave for school. Rolando was

shot twice during the robbery and the men took a safe from the home. The investigating officers received a tip that appellant was involved. Subsequently, appellant was in the Harris County Jail for other reasons when he was questioned by Officer Wyatt and Deputy McCool regarding this robbery. During the course of the interrogation, appellant gave an oral statement that was unrecorded. A written statement was then prepared by McCool and signed by appellant. Appellant gave another oral statement that was recorded.[1] Appellant was later charged with aggravated robbery involving the use of a deadly weapon.

## II. MOTION TO SUPPRESS

In his first issue, appellant contends the trial court erred in denying his motion to suppress his confession because it was involuntary. Appellant urges two grounds in support of his claim.

A. *Inducement to Confess by Promise*

Appellant first contends his confession was involuntary because it was induced by McCool's promise of some benefit to appellant. At the hearing on the motion to suppress, Wyatt testified that he never promised appellant "anything in exchange for being truthful or anything like that." Wyatt said that he was sure he told appellant "this is [your] chance to be honest and tell us what happened." Wyatt told appellant "if he wants to be honest, it looks better." Wyatt was certain he told appellant to stop lying and be honest.

Appellant testified Wyatt and McCool led him to believe that it would help him if he talked to them. When asked, "How," appellant said he was told that he had a chance of being given probation. Appellant claimed McCool told him that he would not get bond but also testified "they" were "basically saying you'll get a

---

[1] The written statement and recorded oral statement were admitted into evidence.

2

bond if you . . . cooperate with us. . ..''  Then, on cross-examination, appellant testified as follows:

> Q. With regards to any sort of promises that they made you, they never promised you any sort of deal on this case, did they?
>
> A. No, they didn't promise. No, they didn't promise.

After both sides made closing arguments, the trial court denied the motion to suppress. On the record, the trial court found appellant "was never promised anything." The trial court found Wyatt was credible and had testified truthfully. Further, the trial court found appellant's testimony was not credible. The trial court concluded that appellant's statements were freely and voluntarily made.[2]

McCool testified during the State's case-in-chief. According to her, she never mentioned a bond and did not recall Wyatt doing so either. The following exchange subsequently occurred:

> Q.     Did you tell Mr. Tamayo at the time that you were asking the questions that: You need to let us know what your role is so you can help yourself?
>
>         Did you use questions like that?
>
> A.     I have used questions — I have told people before, you know, Make yourself better. This could help yourself.
>
> Q.     So, when you're saying, "This could help yourself," you're saying that the statement may, in fact, be of some benefit to you by telling us your side of the story, correct?
>
> A.     Yes. To be honest. Correct.

McCool denied that she or Wyatt told appellant that if he talked to them he might be able to get probation. Appellant then argued to the trial court that McCool "admitted that this defendant was told that the statement could be used to help

---

[2] The trial court entered written findings of fact and conclusions of law, none of which are expressly challenged on appeal.

him." On cross-examination, McCool testified that neither she nor Wyatt told appellant, "that you need to help yourself." She further stated that she did not offer any benefit or leniency, or make any promises to appellant in exchange for giving a statement.

A statement is involuntary, and thus inadmissible, if it is induced by a promise that is (1) of some benefit to the defendant; (2) positive; (3) made or sanctioned by someone in authority; and (4) of such a character as would likely influence the defendant to speak untruthfully. *Mason v. State*, 116 S.W.3d 248, 260 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). The record does not reflect any positive benefit was promised to appellant. McCool testified that she had told others, not appellant, that "This could help." McCool denied ever making that statement to appellant. Moreover, general, non-specific statements that a defendant could help himself do not render a statement involuntary. *See Drake v. State*, 123 S.W.3d 596, 603 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). "General promises of leniency, such as the officer's statement that [a defendant's] cooperation by giving a statement would "help" the accused do not reach the required level for improper inducement." *Coleman v. State*, 440 S.W.3d 218, 225 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

The only evidence in support of appellant's contention that he was offered a benefit is his own testimony regarding getting bond.[3] Nothing in the record supports appellant's claim and the testimony of Wyatt and McCool contradicted it. The trial court chose to disbelieve appellant's testimony and we defer to this assessment of the facts. *See Coleman*, 440 S.W.3d at 224. Further, appellant made no claim that the alleged suggestion of bond induced his statement. *See Bordman v.*

---

[3] The record reflects bond was set in this cause number at $45,000.

*State*, 56 S.W.3d 63, 69 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("Texas law has long barred the use of a statement *induced* by a promise of someone in authority.") (emphasis added) (citing *Warren v. State*, 29 Tex. 369, 372 (1867)). We therefore hold the trial court did not err in denying appellant's motion to suppress on this ground.

B. *"Two-Step" Interrogation Technique*

Appellant further claims there is a high-probability police officers violated appellant's *Miranda*[4] protections by employing an improper two-step interrogation technique. A "two-step" or "question first, warn later" interrogation occurs when a suspect is interrogated without receiving *Miranda* warnings, a confession is obtained, the suspect is then given the *Miranda* warnings, and the suspect repeats the confession. *Vasquez v. State,* 483 S.W.3d 550, 553 (Tex. Crim. App. 2016) (citing *Missouri v. Seibert*, 542 U.S. 600, 605–06, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004)). The deliberate employment of such a tactic is impermissible. *Carter v. State*, 309 S.W.3d 31, 38 (Tex. Crim. App. 2010); *see also Martinez v. State*, 272 S.W.3d 615, 626 (Tex. Crim. App. 2008) (holding that when a two-step interrogation tactic has been used deliberately, a suspect's unwarned and warned statements must be suppressed).

Both Wyatt and McCool testified that appellant was given his *Miranda* warnings before he was questioned and gave the first oral, and unrecorded, statement. Appellant, however, testified that he did not receive the *Miranda* warnings until after he initially confessed off-camera.

The record reflects appellant did not allege his interrogation employed the two-step technique in any of his written motions to suppress or at the hearing on

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5

those motions. Accordingly, as set forth by the court in *Vasquez*, 483 S.W.3d at 555-56, this ground was not preserved for our review. *See* Tex. R. App. P. 33.1(a). We overrule issue one.

### III.    PRE-TRIAL IDENTIFICATION PROCEDURES

Appellant's second issue asserts the trial court erred during the punishment phase by admitting certain pre-trial and in-court identifications of him because the pre-trial identification procedures were impermissibly suggestive. During the punishment phase, Charles Demirbas testified, with the assistance of an interpreter, that his gas station was robbed by two men and his manager was shot. Demirbas was later shown an array of six photographs and asked if he could identify anyone as having robbed his store. Demirbas recognized one person. In a hearing outside of the jury's presence, Demirbas did not remember being told someone had been arrested. Demirbas was asked if he remembered what the officer told him before he was shown the array. Demirbas stated, "He said there's the people that – guilty people and if you can identify the man that robbed your store, please do so." He then testified the officer did not tell him that the guilty person was in one of the photos or which person was the suspect. Demirbas stated he was not guessing when he identified the robber but was certain.  The trial court found the pre-trial identification procedure was not impermissibly suggestive or unreliable. Demirbas subsequently identified appellant as one of the robbers in front of the jury.

The other identification appellant challenges is that of Sindy Urbina, a cashier at Demirbas's gas station. Again a hearing was held outside the jury's presence. Urbina testified that she had seen appellant at the store prior to the day of the robbery and knew for sure, that day, it was him. She later met with an officer and was shown a photographic array. Urbina testified his instructions were to identify someone. Urbina testified the officer did not indicate or suggest which

6

photo she should select. She agreed that she expected to see one of the robbers and had been told someone had been arrested. Urbina testified she was not given a name. At the close of the hearing, counsel argued that Urbina's identification was based upon her prior observations of appellant in the store as a customer, rather than as one of the robbers. Counsel did not argue the identification procedure was suggestive. The trial court found the pre-trial identification procedure was not impermissibly suggestive and the jury would determine what weight to ascribe Urbina's testimony. Urbina subsequently identified appellant as one of the robbers before the jury.

Sergeant Ashmore testified that he compiled a photographic lineup and showed it to Demirbas and Urbina. When Ashmore showed them the lineups, he did not indicate who the suspect might be or whether any suspects were actually in the lineups. Both identified appellant.

We determine the admissibility of a pretrial identification by asking (1) whether the pretrial procedure was impermissibly suggestive; and (2) if so, whether the suggestive pretrial procedure gave rise to a very substantial likelihood of irreparable misidentification. *Aviles-Barroso v. State*, 477 S.W.3d 363, 380–81 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). A defendant must prove both elements by clear and convincing evidence. *Id.* "In the absence of impermissibly suggestive pretrial procedures, in-court identification testimony is always admissible." *Cooks v. State*, 844 S.W.2d 697, 732 (Tex. Crim. App. 1992). "[O]bjections to the reliability of the in-court identification go to its weight and not its admissibility." *Id.*

Suggestiveness may be created by police suggesting the suspect is included in the photo array. *Solomon v. State*, 469 S.W.3d 641, 645 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim.

7

App. 1995)). However, "a lineup is not rendered unnecessarily suggestive simply because the complainant is told that it contains a suspect, because a complainant would normally assume that to be the case." *Harris v. State*, 827 S.W.2d 949, 959 (Tex. Crim. App. 1992); *see also Burkett v. State*, 127 S.W.3d 83, 87 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (concluding the officer's disclosure that a suspect was included in the photo array did not, by itself, render the pretrial identification impermissibly suggestive because a complaining witness normally assumes that a photo array includes a suspect).

Appellant's brief claims the trial court erred in finding the pre-trial identification procedures were not impermissibly suggestive because officers suggested the guilty person was in the lineups. Demirbas, Urbina and Ashmore testified that Ashmore did not tell them a suspect was in the array. Appellant points to Demirbas's testimony that the officer said "there's the . . . guilty people . . ." and Urbina's knowledge that someone had been arrested.

Although there was conflicting testimony as to whether Demirbas knew that someone in the lineups was a suspect, that fact alone would not make the identification impermissibly suggestive. *See Rojas v. State*, 171 S.W.3d 442, 448 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding a lineup is not impermissibly suggestive simply because a witness is told it includes a suspect since a witness would normally assume that to be the case). Likewise, Urbina's belief that someone in the lineup was a suspect did not render the pretrial identification procedure impermissibly suggestive. *Id.* Because, at most, Demirbas and Urbina were aware, or believed, the lineup included a suspect, we conclude the pretrial identification procedure was not impermissibly suggestive. Accordingly, we need not address whether the procedure created a substantial likelihood of misidentification. *See Abney v. State*, 1 S.W.3d 271, 275 (Tex. App.—Houston

8

[14th Dist.] 1999, pet. ref'd) ("A finding that a challenged pretrial identification procedure was not impermissibly suggestive eliminates the need to determine whether the procedure gave rise to a very substantial likelihood of misidentification."). Appellant's second issue is overruled.

## IV. JURY SEQUESTRATION

In his third issue, appellant argues the trial court abused its discretion by failing to sequester the jury. Article 35.23 of the Texas Code of Criminal Procedure, entitled "Jurors May Separate," provides, in pertinent part:

> The court on its own motion may and on the motion of either party shall, after having given its charge to the jury, order that the jury not be allowed to separate, after which the jury shall be kept together, and not permitted to separate except to the extent of housing female jurors separate and apart from the male jurors, until a verdict has been rendered or the jury finally discharged.... In any case in which the jury is permitted to separate, the court shall first give the jurors proper instructions with regard to their conduct as jurors when separated.

Tex. Code Crim. Proc. Ann. art. 35.23 (West 2006). The defendant must either timely file a motion to sequester or timely object to a request to separate to preserve for appeal a complaint that the trial court deprived the defendant of the right to have the jury sequestered. *Polk v. State*, 367 S.W.3d 449, 454 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *Sanchez v. State*, 906 S.W.2d 176, 178 (Tex. App.—Fort Worth 1995, pet. ref'd)). A party waives the right to have the jury sequestered unless the party makes a timely request to sequester the jury. *Keiser v. State*, 880 S.W.2d 222, 223 (Tex. App.—Austin 1994, pet. ref'd). If there is no such request, it is within the trial court's discretion to allow the jury to separate. *Callen v. State*, 303 S.W.3d 322, 326 (Tex. App.—Eastland 2009, pet. ref'd).

The record reflects that after deliberations began the trial court informed the parties in open court that he was going to dismiss the jury and instruct them to return the next day. Appellant did not object or move to sequester the jury. Accordingly, his complaint was not preserved for our review. *See* Tex. R. App. P. 33.1(a). Issue three is overruled.

## V.    EXCLUSION OF EVIDENCE

Appellant claims in his fourth issue the trial court abused its discretion by excluding evidence during the punishment phase and denying him "an opportunity to correct a false impression created by the State." Specifically, appellant sought to introduce Facebook photos of Rolando and Daniel exhibiting money and guns and a portion of Daniel's Facebook page "about his thug life." The State objected the exhibits were not relevant and the trial court agreed. Appellant's brief argues the State opened the door to such evidence by introducing into evidence Facebook photos showing appellant displaying guns and cash.

In a non-capital felony trial, evidence is admissible during the punishment phase if "the court deems [it] relevant to sentencing." *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2016). Evidence is relevant to sentencing if it helps the factfinder decide what sentence is appropriate for a particular defendant given the facts of the case. *Humaran v. State*, 478 S.W.3d 887, 904 (Tex. App.— Houston [14th Dist.] 2015, pet. ref'd) (citing *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009)). The trial court is afforded wide discretion when deciding what evidence to admit, and we will not disturb its ruling on appeal unless it falls outside the zone of reasonable disagreement. *Id*.

Victim character evidence is admissible during the punishment phase if the factfinder "may rationally attribute the evidence to the accused's personal responsibility and moral culpability." *Hayden*, 296 S.W.3d at 552 (internal

10

quotation marks omitted). However, evidence that is useful only to draw a comparison between the victim and other members of society based on the victim's worth "should usually be excluded under rule 403." *Id*. Evidence that Daniel and Rolando were "thugs" would therefore be irrelevant and inadmissible if offered to show that their lives were less valuable than other members of society.

Nevertheless, evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence. *See Renteria v. State*, 206 S.W.3d 689, 697–98 (Tex. Crim. App. 2006). A party opens the door by leaving a false impression with the jury that invites the other side to respond. *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005). But even if a party opens the door to rebuttal evidence, the trial judge still has the discretion to exclude the evidence under Rule 403. *See Wheeler v. State*, 67 S.W.3d 879, 886 (Tex. Crim. App. 2002); *Martinez v. State*, 17 S.W.3d 677, 687 (Tex. Crim. App. 2000). Courts generally prohibit a party from using extrinsic evidence to impeach a witness on a collateral issue. *Daggett,* 187 S.W.3d at 454 n. 24. An issue is collateral if, beyond its impeachment value, a party would not "be entitled to prove it as a part of his case tending to establish his plea." *Bates v. State*, 587 S.W.2d 121, 141–42 (Tex. Crim. App. 1979) (opinion on reh'g) (internal quotations omitted). Unless the witness's testimony created a false impression that is "directly relevant to the offense charged," allowing a party to delve into the issue beyond the limits of cross-examination wastes time and confuses the issues. *Hayden*, 296 S.W.3d at 554; *Daggett*, 187 S.W.3d at 454 n. 24.

Here, the trial court was well within its discretion to exclude the exhibits. Evidence that Daniel and Rolando are "thugs" was a collateral issue — it was not relevant to the jury's assessment of the appropriate sentence to impose on appellant. Inasmuch as it was relevant, it would only be relevant for the

11

impermissible purpose of comparing their worth to that of other members of society. Allowing appellant to impeach the complainants' character with extrinsic evidence would waste time and confuse the issue by focusing the jury's attention on the character of the complainants rather than the defendant's personal responsibility and moral culpability. Thus, it was within the trial court's discretion to exclude the evidence under Rule 403. *See Hayden*, 296 S.W.3d at 554–55. Because the trial court's ruling was not outside the zone of reasonable disagreement, issue four is overruled.

## VI.    ADMISSION OF EVIDENCE

Appellant's fifth and final issue contends the trial court erred in admitting evidence during the punishment phase on the grounds it was more prejudicial than probative. *See* Tex. R. Evid. 403.  Appellant complains of the admission of:

- State Exhibit No. 125 — Harris County Jail records reflecting various infractions from January 21, 2013, until January 8, 2015;

- State Exhibit Nos. 63, 64, 65, and 124 — pictures from appellant's Facebook account; and

- State Exhibit Nos. 116 through 123 — pictures of appellant's tattoos.

The record reflects that Deputy Heine testified, without objection, to the contents of the jail disciplinary records. Officer Kennedy described, without objection, the photographs from appellant's Facebook account which show him posing with cash, guns, and friends. Officer Young testified, without objection, regarding the tattoos shown in the photographs of appellant and their significance.

The Texas Court of Criminal Appeals has recently reiterated that "erroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of

ruling.' " *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *see also Estrada v. State*, 313 S.W.3d 274, 302 n. 29 (Tex. Crim. App. 2010) (noting that any preserved error with respect to admission of complained-of evidence was harmless in light of "very similar evidence" admitted without objection); *McNac v. State*, 215 S.W.3d 420, 424–25 (Tex. Crim. App. 2007) (in harm analysis, concluding that the "unchallenged evidence [was] essentially cumulative" of the challenged evidence). In other words, error in the admission of evidence may be rendered harmless when "substantially the same evidence" is admitted elsewhere without objection. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991).

Appellant did not object to the testimony of Deputy Heine, Officer Kennedy, or Officer Young. His objection was to the admission of the exhibits themselves. Any error in admitting the exhibits was rendered harmless when substantially the same evidence was admitted elsewhere without objection. *See Nickerson v. State*, 312 S.W.3d 250, 263 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see also Petriciolet v. State*, 442 S.W.3d 643, 654 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Appellant's fifth issue is overruled.

Having overruled all of appellant's issues, the judgment of the trial court is affirmed.


/s/     John Donovan
Justice


Panel consists of Justices Jamison, Donovan, and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).