

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00405-CR

_____

MICHAEL HARGRO, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1843675

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

## I. INTRODUCTION

Edgar Gandara resided in a group home for persons with intellectual and developmental disabilities, and Appellant Michael Hargro worked as a caregiver at that group home. At the end of Hargro's shift on December 16, 2018, another employee arrived at the group home and discovered that Gandara had sustained second-degree burns to multiple areas of his body. Although these burns constituted a serious bodily injury, Hargro had neither provided nor sought medical care for Gandara. Hargro was tried and convicted of the first-degree felony offense of injury to a disabled individual by omission causing serious bodily injury. *See* Tex. Penal Code Ann. § 22.04(a-1)(1), (e).

On appeal, Hargro raises four issues. His first three issues challenge the sufficiency of the evidence, arguing that his omission neither caused Gandara's serious bodily injury nor served as the but-for cause of any additional or worsening serious bodily injury. His fourth issue complains of the trial court's admission of evidence under Texas Rule of Evidence 403. *See* Tex. R. Evid. 403.

Hargro's conviction for the first-degree felony offense of injury to a disabled individual by omission causing serious bodily injury cannot be sustained because there is insufficient evidence that his omission caused Gandara's serious bodily injury, caused a separate serious bodily injury, or worsened his serious bodily injury. The record does, however, support a conviction for the lesser-included third-degree felony

offense of injury to a disabled individual by omission causing bodily injury. *See* Tex. Penal Code Ann. § 22.04(a-1)(3), (f). We will reverse the trial court's judgment and remand the case to the trial court to reform the judgment to instead reflect a conviction for the lesser-included third-degree felony offense and to hold a new punishment hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Hargro began working for Volunteers of America (VOA) in the summer of 2018. VOA is a nonprofit organization that operates several multi-bedroom residential homes for intellectually and developmentally disabled individuals. Gandara lived in the Millen House—one of VOA's residences. Gandara had Angelman Syndrome, a genetic disorder that caused developmental delays. He was nonverbal and required constant care, including changing his diaper, bathing him, and feeding him. And although he could sometimes slide himself around on the floor, he required a wheelchair or assistance to walk.

On December 15, 2018, Hargro was assigned to work the overnight shift at the Millen House. He arrived at approximately 9:30 p.m. and began his shift as the sole caregiver for the residents. The following morning, at approximately 5:40 a.m., Shonae Davis, a VOA employee who had worked at the Millen House for twenty-one years, arrived at the Millen House to relieve Hargro and begin her morning shift. But after exiting her vehicle, she heard screaming coming from inside the house. Davis ran inside and discovered Gandara wrapped in a comforter on the couch in the living

3

room. His face was red, and he was screaming and crying. Davis unwrapped the comforter and found Gandara wearing only a diaper. But when she removed the diaper to check for wetness, Gandara screamed even more—his skin had peeled off with the diaper. When Davis asked Hargro what happened, he did not respond.

Realizing that Hargro had not called anyone to help Gandara, Davis called 9-1-1 while Hargro stood in the kitchen. Paramedics arrived and transported Gandara to Medical City Arlington Hospital. However, Medical City Arlington Hospital was unequipped to treat Gandara's burns, so he had to be transported to Medical City Plano Hospital, where he was treated in a specialized burn unit.[1]

The Texas Department of Family and Protective Services (DFPS) began an investigation into Gandara's injuries. The investigation resulted in a finding of confirmed reportable conduct, and DFPS submitted Hargro's name into a public registry for employee misconduct. He was subsequently arrested and indicted for two counts of injury to a disabled individual causing serious bodily injury. Count One was for intentionally or knowingly causing serious bodily injury to Gandara, a disabled individual, by immersing him in hot water. Count Two was for intentionally or knowingly by omission, namely failing to seek or to provide adequate medical care, causing serious bodily injury to Gandara, a disabled individual, whom Hargro had a

---

[1]Gandara developed a fever while at the hospital, but the cause of the fever was undetermined.

4

duty to care for. Hargro pleaded not guilty to both counts, and the case proceeded to a jury trial.[2]

Several witnesses testified at trial. Cicely Triplett, a manager for VOA, testified that she had hired Hargro and that he had worked at other residences prior to the incident with Gandara. As part of his training, Hargro had received handle-with-care instructions and education in CPR and first aid. Triplett confirmed that if Millen House residents were injured or hurt, the staff was required to act, even if the staff member had not caused the injury. Triplett explained that she had informed Hargro that he would have to change Gandara's diapers during his shift, as Gandara was incontinent. Gandara was usually bathed sometime between 4:00 p.m. and 8:00 p.m., and he required assistance in bathing because he was unable to operate the faucet by himself. Triplett listed several other staff members who had cared for Gandara prior to Hargro's shift on December 15th, but she did not know who had bathed Gandara that day.

Lynnette Stevenson, another VOA employee, confirmed that staff members had received handle-with-care training and that they had been instructed on whom to contact in the event of an injury or emergency. She described her typical duties at the Millen House and how she had familiarity with caring for Gandara. She explained that she would change his diaper and then put him to bed during her shift. It was not

_____

[2]Gandara died before trial from causes unrelated to the burns.

5

normal to bathe Gandara during the night shift unless he had a "major accident." Stevenson confirmed that before Hargro's shift, she had worked between 6:00 p.m. and 9:30 p.m. She testified that she had not bathed Gandara during her shift, that she had not observed any injuries on him, and that he had been asleep when Hargro's shift had begun.

When the State called DFPS Investigator Christina Hulett to testify, Hargro objected to her testimony. Hargro argued that her testimony—that he had been placed on the employee misconduct registry—was more prejudicial than probative. The trial court overruled his objection, and DFPS Investigator Hulett was permitted to testify. DFPS Investigator Hulett explained that the objective of her investigation was to determine whether physical abuse had occurred. She noted that DFPS investigations can result in various findings, including a confirmed finding of an allegation, an unconfirmed finding, an inconclusive finding, or a finding of confirmed reportable conduct. She further noted that if she makes a finding of confirmed reportable conduct, she must then submit the alleged perpetrator's name into a public registry for employee misconduct.

As part of DFPS Investigator Hulett's investigation into Gandara's injuries, she interviewed Hargro. Hargro told her that he had found Gandara in his bedroom with a soiled diaper at 2:00 a.m. Hargro had attempted to change the diaper, but he was unable to locate the wipes, and the gloves were too small. Consequently, Hargro had used Gandara's soiled diaper to initially wipe him and then used two unsoiled diapers

to further clean him. Hargro told DFPS Investigator Hulett that he did not bathe Gandara but that he had noticed that Gandara's genitals were somewhat red. Hargro explained that because it was 2:00 a.m., he did not report the redness. Later that morning, Hargro had observed a blister on the back of Gandara's right foot but assumed that it was a wart. Hargro also did not report the blister before Davis's arrival. Hargro and Gandara had spent the remainder of the time on the couch watching TV, and Hargro maintained that, although Gandara occasionally moved around, he never cried or whined. Hargro explained that Davis had arrived at 5:30 a.m., turned on all the lights, and asked about Gandara's condition. Hargro maintained that it was not until Davis had checked on him that Gandara began screaming. DFPS Investigator Hulett found confirmed reportable conduct and submitted Hargro's name into a public registry for employee misconduct. Although she had found confirmed reportable conduct, she explained that no one had admitted to causing Gandara's burns.

Police Detective Joshua Stelter testified that he had reviewed the narratives provided by DFPS Investigator Hulett and that his investigation was fairly limited. He arrested and interviewed Hargro. Hargro told Detective Stelter that he had noticed that Gandara's genitals were red when he checked on him in bed. Hargro confirmed the information that he had told to DFPS Investigator Hulett, and again, he claimed that Gandara had not begun screaming until Davis had checked on him.

7

Finally, Dr. John Hershman testified as an expert medical witness. In December 2018, Dr. Hershman worked as a burn surgeon at Medical City Plano Hospital. He explained that second-degree burns, so long as they do not get infected, will often heal on their own. Deep-second-degree burns, however, may require excision of the burn tissue and skin grafting. Burn patients would have pain at the burn sites, and the development of blisters is patient dependent. Dr. Hershman testified that while it is important for him to immediately see burn victims, he waits 24 to 48 hours for the burns to declare themselves before beginning treatment.

With respect to Gandara's injuries, he had burns on nine percent of his body, including on his buttocks, thighs, genitals, and both feet. Three percent of his body had second-degree burns, and six percent of his body had deep-second-degree burns. Gandara required three surgeries, including excision and skin grafting. Dr. Hershman opined that Gandara's burns constituted a serious bodily injury. He also noted that Gandara had developed blisters on the burn sites and explained that friction, such as wiping someone down with a diaper, could have possibly ruptured some of the blisters.

The jury found Hargro not guilty as to Count One and guilty as to Count Two, and it assessed his punishment at seven years' confinement. The trial court entered the judgments in accordance with the jury's verdicts, and Hargro filed this appeal.

## III. DISCUSSION

In his first three issues, Hargro contends that the jury heard insufficient evidence that his alleged omission (1) caused Gandara the initial serious bodily injury, (2) caused Gandara an additional serious bodily injury, and (3) was the but-for cause of an additional or worsening serious bodily injury. In his fourth issue, he maintains that the trial court abused its discretion by admitting DFPS Investigator Hulett's testimony regarding his placement on the employee misconduct registry.

### A. SUFFICIENCY OF THE EVIDENCE

Hargro's first through third issues challenge the sufficiency of the evidence that his omission (1) caused Gandara's initial serious bodily injury, (2) caused him a separate serious bodily injury, or (3) was the but-for cause of an additional or worsening serious bodily injury. While we agree with all three sufficiency challenges, there is sufficient evidence for the jury to have found Hargro guilty of the lesser-included offense of injury to a disabled individual by omission causing bodily injury. *See* Tex. Penal Code Ann. § 22.04(a-1)(3).

### 1. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

9

This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by

10

state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914.

The Double Jeopardy Clause precludes a second trial once a reviewing court has determined that the evidence introduced at trial was insufficient to sustain the verdict; in such a case, we must acquit. *Burks v. United States*, 437 U.S. 1, 15–16, 98 S. Ct. 2141, 2149–50 (1978); *Greene v. Massey*, 437 U.S. 19, 24, 98 S. Ct. 2151, 2154 (1978). However, a conviction must be reformed if (1) in finding a defendant guilty of the greater offense, the jury necessarily found that the defendant committed the lesser offense, and (2) the evidence is legally sufficient to support the defendant's conviction for the lesser offense. *Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014).

## 2. Applicable Law

As charged here, a person commits the first-degree felony offense of injury to a disabled individual by omission causing serious bodily injury if (1) the person is an employee of a group home or facility for persons with an intellectual or developmental disability and (2) the person intentionally or knowingly by omission causes serious bodily injury to a disabled individual who is a resident of that group home or facility. *See* Tex. Penal Code Ann. § 22.04(a-1)(1), (d), (e).

11

Causation is established where "the result would not have occurred but for [the defendant's] conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *Id.* § 6.04(a). One kind of "conduct" is an omission, defined as a "failure to act." *Id.* § 1.07(a)(34). Where the allegation is a failure to seek or to provide medical care, the result must flow from that conduct. *See Cyr v. State*, 665 S.W.3d 551, 561 (Tex. Crim. App. 2022).

"[B]odily injury means physical pain, illness, or any impairment of physical condition." Tex. Penal Code Ann. § 1.07(a)(8). Serious bodily injury is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). "[P]rotracted" means "continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." *Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987) (en banc). The Legislature intended that there be a meaningful difference between "bodily injury" and "serious bodily injury." *Id.* at 349. The determination that an injury qualifies as a serious bodily injury must, therefore, be made on a case-by-case basis. *Id.*

To obtain a conviction for the first-degree felony offense of injury to a disabled individual by omission causing serious bodily injury, however, it is not sufficient for the State to merely prove that a person failed to provide reasonable medical care for a

disabled individual who had sustained a serious bodily injury. *Payton v. State*, 106 S.W.3d 326, 327–28 (Tex. App.—Fort Worth 2003, pet. ref'd). Instead, the State must prove that the person's omission caused a separate serious bodily injury, even if the separate injury was a worsening of the preceding serious bodily injury. *Dusek v. State*, 978 S.W.2d 129, 133 (Tex. App.—Austin 1998, pet. ref'd).

### 3. Sufficiency Analysis

Hargro argues that there is insufficient evidence to prove that his omission caused or worsened Gandara's serious bodily injury. We agree.

By its not guilty verdict on Count One, the jury found that Hargro's actions had not caused Gandara's burns, and neither party disputes that the initial burns constitute a serious bodily injury. However, by its guilty verdict on Count Two, the jury found that Hargro's omission had (1) caused Gandara a serious bodily injury, (2) caused him a separate serious bodily injury, or (3) worsened his initial serious bodily injury.

The evidence shows that Hargro had by omission not provided reasonable care to Gandara and that Gandara had sustained burns that amounted to a serious bodily injury. At trial, Dr. Hershman provided extensive testimony regarding the categorization of burns, their respective treatment, and Gandara's condition at the hospital. Yet, beyond the existence of Hargro's omission and Gandara's serious bodily injury, the State did not prove that Hargro's omission—the delay in providing or obtaining medical care—had caused Gandara a serious bodily injury, caused him a

separate serious bodily injury, or worsened his initial serious bodily injury. Consequently, there is insufficient evidence to support Hargro's conviction for injury to a disabled individual by omission causing serious bodily injury.

### a. Evidence of Hargro's Omission Causing the Initial Serious Bodily Injury

We first consider the evidence of Hargro's omission and whether it caused Gandara's initial burns. To quote the State, "[T]here is no evidence that Hargro's omission caused the initial burns sustained by Gandara." We agree. The record is devoid of any evidence that Hargro's omission caused Gandara to suffer the initial serious bodily injury. In other words, there is no evidence that Hargro's failure to seek or to provide medical care caused the initial burns. Accordingly, we conclude that there is insufficient evidence that Hargro's omission caused Gandara's initial serious bodily injury.

We sustain Hargro's first issue.

### b. Evidence of Hargro's Omission Causing a Separate Serious Bodily Injury

We next consider the evidence of Hargro's omission and whether it caused Gandara a separate or additional serious bodily injury. The State attributes Gandara's subsequently formed blisters to Hargro's omission and argues that the blisters are a serious bodily injury. This argument is unsupported by the record. It is undisputed that Gandara developed blisters from the initial burns; however, there is no evidence of when the blisters were sustained or that they constitute a serious bodily injury.

14

The State asked Dr. Hershman whether Gandara could have died from the burns, whether he was permanently disfigured from the burns, and whether the burns affected the function of his skin. And for each question, Dr. Hershman confirmed that the burns were a serious bodily injury. But he provided no such opinion on the formation of the blisters. He testified that a burn may initially appear red and that it can eventually develop blisters. He also explained that there is no set formula of when the blisters will develop and that their formation varies with the patient. Dr. Hershman did not, however, testify either that the blisters were caused by Hargro's omission or that their development constituted an additional serious bodily injury.

The State asserts that the jury may apply common sense, knowledge, and ordinary life experiences to conclude that an injury constitutes serious bodily injury. While this is true, "[t]he jury is not allowed to draw conclusions based on speculation even if that speculation is not wholly unreasonable because speculation is not sufficiently based on the evidence to support a finding of guilt beyond a reasonable doubt." *Metcalf v. State*, 597 S.W.3d 847, 855–56 (Tex. Crim. App. 2020). Here, whether the blisters constituted a serious bodily injury is speculation.

Dr. Hershman simply testified to the presence of the blisters and their possible complications—not that the blisters constituted an additional serious bodily injury caused by Hargro's omission. In fact, there is no evidence that Gandara had suffered a substantially higher chance of death from the blisters, that the blisters had caused his death, that the blisters had caused additional permanent disfigurement, or that the

15

blisters had further protracted the loss or impairment of any of his bodily members or organs. *See* Tex. Penal Code Ann. § 1.07(a)(46).

Even if we assume that the blisters constituted a serious bodily injury, insufficient evidence remains that Hargro's omission was the but-for cause of those injuries. When asked whether friction—Hargro's wiping of Gandara with a diaper— could have caused or ruptured the blisters, Dr. Hershman confirmed that it was possible. And yet, the State's purported but-for cause of the blistering—wiping— is an affirmative act—not an omission. "An omission, such as failing to take an injured child to the doctor, cannot be an affirmative act." *Avellaneda v. State*, 496 S.W.3d 311, 318 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Thus, even if Hargro's wiping Gandara with a diaper had caused the blisters to either form or rupture and the blisters had constituted a serious bodily injury, there remains no evidence that the blisters were the result of Hargro's omission. *See id.* We conclude that there is insufficient evidence that Hargro's omission caused Gandara a separate serious bodily injury.

We sustain Hargro's second issue.

### c. Evidence of Hargro's Omission Worsening the Initial Serious Bodily Injury

Finally, we consider the evidence of Hargro's omission and whether it was the but-for cause of a worsening of Gandara's initial serious bodily injury. With respect to the condition of Gandara's burns, the record is likewise without evidence that Hargro's omission worsened Gandara's initial serious bodily injury. Dr. Hershman

16

stated that it is important that he immediately sees patients after they are burned, but he also explained that there is a 24 to 48 hour waiting period in which he allows the burns to fully declare themselves before beginning treatment. Presuming that Gandara had sustained the burns sometime near the beginning of Hargro's 8-hour shift, Dr. Hershman's timeline would require an additional 16 to 40 hours for the burns to declare themselves before beginning treatment.

But, even if we disregard Dr. Hershman's 24 to 48 hour waiting period, there is no testimony that Hargro's omission delayed Gandara's treatment, hindered his recovery, or exacerbated his condition. Rather, much of Dr. Hershman's testimony was merely generalized to the treatment and possible complications associated with burn victims.

He explained that (1) infection is a major concern with burn wounds, (2) deep-second-degree burns can cause long-term issues, (3) scar tissue could affect the functionalities of one's body, (4) second-degree burns will usually go away but may change the color of an individual's skin, and (5) deep-second-degree burns can interfere with skin glands.

Yet, there is no evidence that Gandara suffered from any of these concerns, and even if he had, there is also no evidence that Hargro's omission had been the but-for cause.[3] Bodily injury cannot be elevated to serious bodily injury by postulating

---

[3]The State points us to the fact that Gandara had developed a fever while in the hospital as a "rational inference that Hargro's delay in seeking or obtaining medical

17

potential complications which are not in evidence. *Hernandez v. State*, 946 S.W.2d 108, 109 (Tex. App.—El Paso 1997, no pet.). Here, Dr. Hershman's testimony merely explained potential concerns associated with burns—not actual complications that Gandara had experienced due to Hargro's delay in providing or obtaining medical care.

More specifically, Dr. Hershman did not testify that the burns caused Gandara any long-term issues, scar tissue affecting his functionalities, skin discoloration, or interference with his skin glands.[4] Moreover, even if he had testified that Gandara had experienced any of these complications, the fact remains that such a worsening condition was never once attributed to Hargro's omission.

Hargro and the State cite several cases to illustrate what is and what is not sufficient evidence to support a jury's finding that a person's omission had caused or

care for Gandara caused an infection and/or delayed recovery." But that position lacks merit for two reasons. First, there is no evidence that Gandara had an infection. Dr. Hershman explained that Gandara had developed a fever, but he did not testify that the fever had been caused by an infection. The medical records confirm that the source of Gandara's fever was unclear and that neither the burns nor the skin grafting had presented any signs of an infection. Second, even if the medical records had shown that Gandara had an infection, there is no evidence that Hargro's omission caused it. Dr. Hershman's testimony provided the jury with evidence that Gandara had developed a fever—not that the fever had been caused by an infection, that an infection had been caused by Hargro's omission, or that an infection had worsened, delayed, or hindered Gandara's recovery.

[4]The State concedes that evidence of "[t]he long-term effects of Gandara's burn injuries, as well as the injuries caused by Hargro's failure to obtain medical treatment, was not able to be presented at trial because Gandara died of unrelated causes in February 2019."

18

worsened another's serious bodily injury. Two of the cases are *Dusek* and *Payton*, which effectively demonstrate the sufficiency concerns that we discuss above. *See Dusek*, 978 S.W.2d at 137; *Payton*, 106 S.W.3d at 332. This appeal is analogous to *Dusek* and distinguishable from *Payton*.

In *Dusek*, a mother brought her son to a hospital with a broken leg. *Dusek*, 978 S.W.2d at 131. She was charged with intentionally or knowingly, by omission, causing serious bodily injury to her son by failing to provide medical care for his broken leg. *Id.* at 132. She was convicted and appealed, challenging the sufficiency of the evidence. *Id.* at 133. The Austin Court of Appeals held that there was no evidence in the record that the mother's omission had caused her child's broken leg or aggravated the seriousness of the injury. *Id.* The court reasoned that none of the medical witnesses testified that the leg appeared to have been broken for an unusual period of time, that treatment was delayed, or that the recovery was in any way hindered by a delay in receiving medical care. *Id.* Because her omission affected neither the course nor the outcome of her child's treatment, the court reversed her conviction. *Id.* at 137.

In *Payton*, a grandfather had custody of a young child. 106 S.W.3d at 327–28. At approximately 8:30 a.m., the grandfather discovered that the child was unresponsive. *Id.* However, the child was not transported to the hospital until 10:45 a.m., and despite lifesaving measures, the child died. *Id.* The grandfather was charged with recklessly causing serious bodily injury to the child by failing to obtain

19

reasonable medical care. *Id.* At trial, several medical witnesses testified that "every minute counted"; that the grandfather's delay had hindered treatment; and that if the child had received medical intervention sooner, the child may have lived. *Id.* at 330. The grandfather was convicted and appealed, challenging the sufficiency of the evidence. *Id.* We affirmed his conviction and held the evidence sufficient to support the jury's verdict that the grandfather had caused serious bodily injury by failing to obtain reasonable medical care for the child. *Id.*

*Payton* is distinguishable from the facts of this appeal as here, there is no evidence that every minute counted or that Hargro's omission worsened the burns, delayed treatment, or hindered recovery. There is no evidence that, after his burns fully declared themselves, Gandara sustained additional injuries or that his condition had been worsened by Hargro's omission. We conclude that there is insufficient evidence that Hargro's omission had worsened Gandara's initial serious bodily injury.

We sustain Hargro's third issue.

Despite the tragic facts in the record before us, we cannot affirm a conviction upon less proof than the law requires. *Pickering v. State*, 596 S.W.2d 124, 129 (Tex. Crim. App. 1980). Accordingly, we hold that the evidence is insufficient to support Hargro's conviction for injury to a disabled individual by omission causing serious bodily injury. *See* Tex. Penal Code Ann. § 22.04(a-1)(1), (d), (e).

## 4. Reformation

Having determined that the evidence is legally insufficient to support Hargro's conviction for injury to a disabled individual by omission causing serious bodily injury, we must now consider whether the judgment should be reformed to reflect a conviction of a lesser-included offense. *See Thornton*, 425 S.W.3d at 299–300.

### a. Applicable Law

Reformation of a judgment is required if (1) in the course of convicting the appellant of the greater offense, the factfinder must have necessarily found every element of the lesser-included offense; and (2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, an appellate court holds that sufficient evidence to support a conviction for the lesser-included offense. *Id.*

If either prong is not satisfied, we lack authorization to reform the judgment. *Id.* at 300. But if both prongs are satisfied, we are authorized—indeed required—to avoid the unjust result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense. *Id.* An offense is a lesser-included offense if it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person suffices to establish its commission. Tex. Code Crim. Proc. Ann. art. 37.09(2).

A person commits the first-degree felony offense of injury to a disabled individual by omission causing serious bodily injury if (1) the person is an employee of

21

a group home or facility for persons with an intellectual or developmental disability and (2) the person intentionally or knowingly by omission causes *serious bodily injury* to a disabled individual who is a resident of that group home or facility. *See* Tex. Penal Code Ann. § 22.04(a-1)(1), (d), (e) (emphasis added).

A person commits the third-degree felony offense of injury to a disabled individual by omission causing bodily injury if (1) the person is an employee of a group home or facility for persons with an intellectual or developmental disability and (2) the person intentionally or knowingly by omission causes *bodily injury* to a disabled individual who is a resident of that group home or facility. *Id.* § 22.04(a-1)(3), (d), (f) (emphasis added). As earlier defined, "[B]odily injury means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8).

### b. Sufficiency of the Lesser-Included Offense

We begin our analysis with the first prong: whether in the course of convicting Hargro of the first-degree offense of injury to a disabled individual by omission causing serious bodily injury, the factfinder must have necessarily found every element of the third-degree offense of injury to a disabled individual by omission causing bodily injury. The third-degree offense differs only from the first-degree offense with respect to the severity of the injuries sustained—whether the person causes a disabled individual to suffer a serious bodily injury or a bodily injury. *Id.* § 22.04(e), (f); *see Wade v. State*, 663 S.W.3d 175, 190 (Tex. Crim. App. 2022) (holding that in the trial of

22

an offense for causing serious bodily injury, appellant was entitled to an instruction for the lesser-included offense of causing bodily injury).

Here, the jury found Hargro guilty of the first-degree offense of injury to a disabled individual by omission causing serious bodily injury. Thus, the jury found that (1) Hargro; (2) intentionally or knowingly; (3) by omission, namely failing to seek or to provide adequate medical care to Gandara; (4) caused serious bodily injury to Gandara; (5) Gandara was a disabled individual; and (6) Hargro had assumed care, custody or control of Gandara or had a legal duty to act because Gandara was a resident of a group home or facility for persons with an intellectual or developmental disabilities, and Hargro was an employee of the group home or facility. *See* Tex. Penal Code Ann. § 22.04(a-1)(1), (d), (e). By finding Hargro guilty of the greater offense, the jury necessarily found all of the elements of the lesser-included offense. The first prong of the *Thornton* analysis is satisfied. *See Thornton*, 425 S.W.3d at 299–300.

We next address the second prong: whether sufficient evidence exists for the lesser-included third-degree offense of injury to a disabled individual by omission causing bodily injury. *See id.* Hargro told DFPS Investigator Hulett that he noticed Gandara's genitals were red when he checked on him but that he did not report it because it was 2:00 a.m.

Davis testified that when she arrived at the Millen House, she heard very loud screaming coming from inside the house. Upon entering the house, she observed Gandara "screaming, face fire red, tears coming down." She explained that she had

23

never seen him cry. In response, Davis removed Gandara's diaper, and he screamed even more because his skin had come off with the diaper. Davis testified that "[Gandara] was in excruciating pain, he was crying" and that it was clear that he needed medical attention. While Davis was tending to Gandara, Hargro "was drinking coffee in the kitchen."

Additional evidence of Gandara's bodily injury is found in Dr. Hershman's testimony. He explained that Gandara was in pain from the burns and that the pain could last for several days. And Hargro has acknowledged that pain meets the definition of bodily injury, stating that "while it may have been painful that Gandara's skin stuck to his diaper, or that some of the blisters ruptured by friction, pain only meets the statutory definition of bodily injury, not serious bodily injury." We agree. There is evidence that Gandara suffered bodily injury from Hargro's omission—i.e., his failure to seek or to provide medical care caused Gandara additional physical pain. The evidence shows that Hargro was wholly nonresponsive to Gandara's injuries—doing nothing to render aid, alleviate the pain, or call for help—and that Gandara was in pain from the burns.

It is for these reasons that we conclude that sufficient evidence exists for the lesser-included third-degree offense of injury to a disabled individual by omission causing bodily injury. *See* Tex. Penal Code Ann. § 22.04(a-1)(3), (f). The second prong of the *Thornton* analysis is satisfied. *See Thornton*, 425 S.W.3d at 299–300; *see Rabb v. State*, 483 S.W.3d 16, 24 (Tex. Crim. App. 2016). With both prongs satisfied,

24

reformation of Hargro's judgment is mandated. *See Turley v. State*, 691 S.W.3d 612, 620 (Tex. Crim. App. 2024).

## B. EVIDENTIARY ISSUE

In his fourth issue, Hargro contends that the trial court abused its discretion by allowing DFPS Investigator Hulett to testify that he had been placed on the employee misconduct registry. Assuming error, the testimony was harmless.

### 1. Applicable Law

The trial court's admission of evidence is reviewed for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). A trial court abuses its discretion only if its ruling falls outside the zone of reasonable disagreement. *Id.* at 344; *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh'g). A reviewing court should uphold an evidentiary ruling if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 123 (Tex. Crim. App. 2006).

Pursuant to Texas Rule of Evidence 403, the trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or the needless presentation of cumulative evidence. Tex. R. Evid. 403; *Lessner v. State*, No. 02-15-00400-CR, 2016 WL 4473263, at *3 (Tex. App.—Fort Worth Aug. 25, 2016, no pet.) (mem. op., not designated for publication). "The issue is whether the search for the truth will be helped or hindered by the interjection of distracting, confusing, or

emotionally charged evidence." *Gigliobianco v. State*, 210 S.W.3d 637, 640 (Tex. Crim. App. 2006) (citation omitted). The court may not exclude relevant evidence that is merely prejudicial because all evidence against a defendant is, by its nature, prejudicial against the defendant; only unfairly prejudicial evidence may be excluded. *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013).

Error in the admission of evidence in violation of Rule 403 is generally not constitutional. *See Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000). We therefore apply Texas Rule of Appellate Procedure 44.2(b) and disregard the error if it did not affect the appellant's substantial rights. Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury

instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

## 2. Harmless Error

Assuming that the trial court erred in admitting the complained-of testimony, the error was harmless under this record. Although DFPS Investigator Hulett explained the purpose of the employee misconduct registry, she only once mentioned that Hargro had been placed on the registry, and the State did not otherwise emphasize such a placement at any other time throughout the trial.

Moreover, DFPS Investigator Hulett's testimony did not distinguish between Hargro's role in initially causing Gandara's burns or his failing to obtain medical care for the burns. In fact, the totality of her testimony indicates that her investigation was primarily focused on the initial cause of Gandara's injuries—as opposed to Hargro's failure to obtain medical care. Notwithstanding the testimony that Hargro had been placed on the employee misconduct registry, the jury found him not guilty of Count One. If the admission of Hargro's placement on the employee misconduct registry had affected his substantial rights, it would have likely affected both Counts One and Two. *See Sirois v. State*, No. 11-06-00240-CR, 2008 WL 1893291, at *6 (Tex. App.—Eastland Apr. 24, 2008, pet. ref'd) (mem. op., not designated for publication) (error in admission of evidence that was relevant to the three charged counts did not affect the appellant's substantial rights when the jury acquitted him on two of the counts). The

jury's verdict demonstrates that DFPS Investigator Hulett's testimony that Hargro had been placed on the employee misconduct registry did not affect both counts. *See id.*

Rather, the jury's verdicts of not guilty as to Count One and guilty as to Count Two indicate that it independently deliberated on the issue of Hargro's guilt and was not influenced by his placement on the employee misconduct registry. Thus, under the circumstances of this case, we have a fair assurance that any error in the admission of DFPS Investigator Hulett's testimony that Hargro had been placed on the employee misconduct registry did not influence the jury or had but a slight effect. *See Johnson*, 967 S.W.2d at 417; *Sirois*, 2008 WL 1893291, at *6.

And so, having reviewed the entire record, we conclude that the trial court's admission of DFPS Investigator Hulett's testimony that Hargro had been placed on the employee misconduct registry did not have a substantial or injurious effect on the jury's verdict and did not affect Hargro's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard the error. *See* Tex. R. App. P. 44.2(b).

We overrule Hargro's fourth issue.

## IV. CONCLUSION

Having sustained Hargro's first, second, and third issues but having also held that sufficient evidence exists for the jury to have convicted him of a lesser-included offense, we remand the case to the trial court to reform Hargro's judgment to reflect a conviction for the third-degree offense of injury to a disabled individual by omission

causing bodily injury, *see* Tex. Penal Code Ann. § 22.04(a-1)(3), (f), and to conduct a new punishment hearing based on the reformed judgment, *see Thornton*, 425 S.W.3d at 299–300.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  September 25, 2025